IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82389-2-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| M.V.J., | |
| Appellant. | |

SMITH, J. — M.V.J. appeals the trial court's order requiring him to provide a DNA[1] sample. He contends that because the trial court acknowledged at the disposition hearing that M.V.J. had already provided a DNA sample and stated it would not require M.V.J. to give a second one, the court's later "checking of the box" directing M.V.J. to provide a DNA sample was a scrivener's error[2]. We agree and remand for the court to correct its error.

FACTS

On September 2, 2020, the State charged M.V.J. with first degree robbery with a deadly weapon under one cause number and unlawful possession of a

---

[1] Deoxyribonucleic acid. A DNA sample is used to identify the probable origin of a body fluid sample associated with a crime

[2] The scrivener's error doctrine is one that states that when there is a typographical error or a minor mistake, for example a clerical error, the court can correct the mistake when it's absolutely clear.

Citations and pin cites are based on the Westlaw online version of the cited material.

firearm in the second degree under a second cause number. On February 11, 2021, the court found M.V.J. guilty of first degree robbery after a fact-finding hearing, and M.V.J. then pleaded guilty to the firearm charge.

On February 24, M.V.J. appeared for a disposition hearing for both charges. During the hearing, when the topic of the DNA fee was presented, the State represented, and the court acknowledged that M.V.J. had already given a DNA sample:

> STATE: [The probation counselor is] indicating he's already given DNA so I'll actually strike that 'cause he doesn't need to pay for it twice.
> THE COURT: All right. So, I am imposing the no-contact order. I am not going to have him do a DNA test since he's already done that. So, he doesn't need to pay the fees on that.

Similarly, as to the firearm charge, the court asked if there were any mandatory fines, to which the State responded, "[y]our Honor, it would be DNA again, but waived because he's already provided DNA."

The court's disposition orders on both causes were issued using a pre-printed form with check boxes. In the disposition order for the robbery conviction, the box for the DNA sample fee was initially checked but subsequently crossed out and initialed, consistent with the trial court's statement at the hearing that it would not order M.V.J. to provide a DNA sample or pay the fee for one. However, the box for paragraph 4.20 of the disposition order was also checked which required M.V.J. to provide a DNA sample. In addition, the box indicating, "DNA previously collected" was also checked. Similarly, in the disposition order for the firearm conviction, the box for the DNA sample fee was not checked, however the box requiring M.V.J. to provide a DNA sample and the box

2

indicating M.V.J. had already provided a sample were both checked.  M.V.J. appeals the disposition order for the robbery conviction.

ANALYSIS

M.V.J. asserts that the trial court did not order a DNA sample, as evidenced by its oral statement at the hearing, and although the written order indicates otherwise, it was a scrivener's error that should be corrected on remand.  The State contends that because the court's written order directed M.V.J. to provide a DNA sample, the court intended for another sample to be collected regardless of what it said in the hearing.  We agree with M.V.J.

Under RCW 43.43.754(1), "[a] biological sample must be collected for purposes of DNA identification analysis from: (a) Every adult or juvenile individual convicted of a felony."  However, "[i]f the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted."  RCW 43.43.754(4).

Here, the trial court clearly stated during M.V.J.'s disposition hearing that it would not order M.V.J. to provide a DNA sample because M.V.J. had already provided one.  Consistent with this statement, the trial court scribbled out the check mark in the box which required M.V.J. to pay the DNA sampling fee and left checked the box indicating that a sample had previously been collected.   Yet the provision in the disposition order directing M.V.J. to provide a DNA sample remained checked.  Given the above, this was undoubtedly a scrivener's error.

The State disagrees and claims that the court only addressed the DNA sample order for the first degree robbery conviction and did not address it with

respect to the unlawful possession of a firearm conviction. That may not be correct. When the court raised the DNA sample requirement regarding the unlawful possession of a firearm conviction, the State indicated that a DNA sample had been provided, and when M.V.J. requested to have all of his costs and anything related waived, the court then stated "[A]ll right" which could have been in agreement to the request.

The State relies on State v. Dailey, 93 Wn.2d 454, 610 P.2d 357 (1980) and State v. Molina, 16 Wn. App. 2d 908, 485 P.3d 963 (2021) review denied, 198 Wash. 2d 1008, 493 P.3d 731 (2021), to support its claim that the trial court's written order is the final order and the court's oral statements have no binding or final effect unless formally incorporated into an order. Although these cases support the rule that Washington is a written order state, the State's interpretation that these cases support its claim here is incorrect.

In Dailey, David Dailey moved to dismiss the charge of negligent homicide at trial based on a violation of due process or in the alternative to proceed to trial with only the original five witnesses the State disclosed rather than the 16 it presented the day before trial. Dailey, 93 Wn.2d at 455-56. The trial court ultimately dismissed the case. Dailey, 93 Wn.2d at 456. The parties disputed the basis of the court's dismissal with the State indicating that it was an improper discovery sanction under CrR 4.7(h)(7) and the defendant stating it was based on prosecutorial mismanagement pursuant to CrR 8.3(b). Dailey, 93 Wn.2d at 456.

The State appealed, and the Court of Appeals reversed stating that " 'the trial court's decision to dismiss constituted a suppression of evidence,' " and that its decision was based on CrR 4.7 (h)(7)(i), which does not include the right to suppress evidence. Dailey, 93 Wn.2d at 457. The Washington Supreme Court reversed and reinstated the trial court's order because the trial court's written order indicated that it "dismissed the criminal prosecution 'in furtherance of justice' pursuant to CrR 8.3(b)." Dailey, 93 Wn.2d at 458-60, (quoting CrR 8.3(b)). In reaching its decision, the Washington Supreme Court considered the trial court's oral ruling even as it referenced its previous determination that "a trial court's oral decision has no binding or final effect unless it is formally incorporated into findings of fact, conclusions of law, and judgment." Dailey, 93 Wn.2d at 458-59. The Washington Supreme Court stated that "[w]ithout question the record amply supports the trial court's dismissal of the criminal prosecution under CrR 8.3(b)." Dailey, 93 Wn.2d at 459.

Here, unlike in Dailey, the court's written order contained an error. In Dailey the evidence on the record sufficiently supported that the trial court's dismissal was based on CrR 8.3(b) like the written order stated, whereas here, the record amply supports that the court did not intend to require M.V.J. to provide another DNA sample despite what the written order stated.

The State's reliance on Molina is also misplaced. In Molina, Bruno Molina claimed that the trial court improperly imposed the DNA collection fee and "two $500 victim penalty assessments rather than a single $500 penalty assessment" under RCW 7.68.035(1)(a). Molina, 16 Wn. App. 2d at 921. At sentencing, in

reference to the victim penalty assessment fee, the trial court stated that its " 'intention, of course, is not that it be double collected for the sake of the record.' " Molina, 16 Wn. App. 2d at 921. However, in the written order, the court imposed one assessment fee for each assault. Molina, 16 Wn. App. 2d at 921-22. Because "Molina was convicted of two counts of assault under [the] same cause number", this court concluded that "only one $500 penalty should have been" given. Molina, 16 Wn. App. 2d at 922. Although in Molina we reiterated that Washington is a written order state, we found that the final written order had errors and reviewed the trial court's oral statement in reaching this conclusion.

As M.V.J. points out, the State's assertion that written orders render all related oral rulings irrelevant, is not accurate. We remand to the trial court to correct the scrivener's error in its disposition order which required M.V.J. to provide a DNA sample.

_____

WE CONCUR:

_____          _____